IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

STATE OF WASHINGTON,      )
                            )      No. 37268-5-III
           Respondent,    )
                            )
      v.                   )      OPINION PUBLISHED IN PART
                            )
IBRAHIM DEVEN TERAN ARNO,  )
                            )
          Appellant.      )

STAAB, J. — Ibrahim Arno presented a forged check to a bank. He was charged and convicted of forgery, possession of stolen property, and bail jumping.

He now appeals, arguing there is insufficient evidence to sustain a conviction for possession of stolen property because a paper check does not qualify as an access device. He also contends the State committed flagrant, ill-intentioned misconduct in closing argument and his trial counsel was ineffective for failing to object to the improper argument.[1]

In the published portion of this opinion, we hold that a paper check presented to a bank is excluded from the definition of an access device as "a transfer originated solely

---

[1] Mr. Arno's opening brief also assigns error to a jury instruction, but he withdraws this assignment of error in his reply brief after conceding the instruction was correct.

by paper instrument." RCW 9A.56.010(1). Because the State relied on the check as the sole access device, the evidence is insufficient to support Mr. Arno's conviction for possession of stolen property. In the unpublished portion of the opinion, we reject Mr. Arno's remaining arguments and affirm his convictions for bail jumping and forgery.

FACTS

Ibrahim Arno brought a forged check for $1,000 to a Wells Fargo Bank in May 2018. The check was nominally written and signed by Jesse Pinnow. Mr. Pinnow testified that a box of checks had been stolen from his house in 2017 and that the check in question was one of those that had been stolen. He denied writing the check, and the signature on the check did not match the bank's records. The account the check was drawn on had been closed earlier after several of the stolen checks were fraudulently cashed in the weeks after they were stolen.

Mr. Arno testified that he received the check as repayment for a debt from a friend, Randolph Bill, who in turn was owed money by his cousin, who would give Mr. Bill a check to give to Mr. Arno. Mr. Bill was not located by law enforcement and did not testify at trial. Mr. Pinnow testified that he did not know Mr. Bill or Mr. Arno.

Mr. Arno told officers that he initially received the check with no signature, sent it back, and received it again, this time with the signature. He testified at trial that he attempted to cash the check as soon as he received it via "picture deposit," but that this had not worked. He testified that he only brought the check in to the bank to see if it was

2

good. Previously he had stated to officers that he brought the check to Wells Fargo because they could cash it there immediately. Arno also told officers that he "didn't think something was right" about the check. Report of Proceedings (RP) at 243.

Mr. Arno stayed at the bank while law enforcement was called and was cordial and cooperative. Mr. Arno had not endorsed the check. Mr. Arno worked at a 7-Eleven and testified the debt Mr. Bill owed him was from store items Mr. Arno had given Mr. Bill that were charged to Mr. Arno's own employee account, which was ultimately deducted from his paychecks.

While his charges were pending, Mr. Arno missed a court date. At trial, he testified that he received a scheduling order with several dates crossed out and was "confused."

A jury found Mr. Arno guilty of forgery, possession of stolen property, and bail jumping. On appeal, he challenges his convictions for possession of stolen property and bail jumping but does not challenge his forgery conviction.

ANALYSIS

A.    SUFFICIENCY OF EVIDENCE FOR POSSESSION OF STOLEN PROPERTY.

Mr. Arno contends that the evidence was insufficient to support his conviction for possession of stolen property because the statutory definition of "access device" specifically excludes paper checks from its definition.

3

This issue requires us to construe the statute and then apply the facts. Our construction of the statute is reviewed de novo. *State v. Pratt*, 196 Wn.2d 849, 852, 479 P.3d 680 (2021). The facts will be viewed in a light most favorable to the State. *State v. Homan*, 181 Wn.2d 102, 105, 330 P.3d 182 (2014).

When we consider the statute's parameters, our primary duty is to ascertain and carry out the legislative intent. *Pratt*, 196 Wn.2d at 853. In determining legislative intent, the first step is to determine if the statute is ambiguous. A statute is ambiguous if there is more than one reasonable interpretation. *State v. Evans*, 177 Wn.2d 186, 192-93, 298 P.3d 724 (2013).

A person is guilty of second degree possession of stolen property if he "possesses a stolen access device." RCW 9A.56.160(1)(c). "Access device" is defined as "any card, plate, code, account number, or other means of account access that can be used . . . to initiate a transfer of funds, *other than a transfer originated solely by paper instrument*." RCW 9A.56.010(1) (emphasis added).

Mr. Arno argues that the statute's plain language excludes an attempt to transfer funds by presenting a bad check for payment. We agree. If the exclusion is to mean anything, it clearly applies to the presentation of a paper check at a bank.

In *State v. Chang*, Division One provided an in-depth analysis of this statutory exclusion. 147 Wn. App. 490, 503, 195 P.3d 1008 (2008). Ultimately, the court concluded that a person could be charged with possessing a stolen access device for

merely possessing bank account numbers. But "[w]here a defendant has actually used or attempted to use a paper instrument to initiate a transfer of funds, the more traditional charges like forgery or fraud remain available as charging options." *Id*. at 504. The facts in this case fit squarely within the statutory exception as interpreted by the court in *Chang*.

The State argues that the conclusion in *Chang* was dicta because it was not necessary to decide the issue in that case. Maybe so, but it is very persuasive dicta given the clear language of the statute. Moreover, the State fails to suggest an alternative interpretation of the exclusion that gives meaning to the statute's plain language. If the exclusion does not apply to presentment of a forged check, it is hard to imagine the circumstances under which it would apply.

Finally, the State argues that it was prosecuting Mr. Arno for possessing an account number, not for presenting a forged check. The record belies the State's argument. In closing, the State made it clear that it was prosecuting Mr. Arno for possessing a stolen check. "So, when we're talking about access device, we're talking about check 214. . . . So it is an access device. In other words, check 214." RP at 400-01. Later, the State again reaffirms, "Again, we talked earlier about what the definition of access device is. It's a check. Check 214 is an access device." RP at 404.

Nonetheless, the State points to its argument in closing where the prosecutor explains that the bad check contained account numbers and a routing number that a

5

person could use to pay bills over the phone.  As Mr. Arno points out, however, the

prosecutor's arguments are not evidence.  In other words, "[t]his may be a provable

proposition, but the State did not prove it."  *State v. Rose*, 175 Wn.2d 10, 17, 282 P.3d

1087 (2012).  In addition, it is clear that the State was not charging Mr. Arno for

possessing bank account numbers; it was charging him with possession of a stolen check.

We hold that a paper check presented to a bank is excluded from the definition of

an access device as "a transfer originated solely by paper instrument."  RCW

9A.56.010(1).  Thus, there is insufficient evidence to support Mr. Arno's conviction for

second degree possession of stolen property.

The panel having determined that only the foregoing portion of this opinion will

be printed in the Washington Appellate Reports, and that the remainder having no

precedential value, shall be filed for public record pursuant to RCW 2.06.040, it is so

ordered.

B.    DID THE STATE IMPROPERLY MISSTATE THE KNOWLEDGE ELEMENT DURING
CLOSING?

Next, Mr. Arno argues the State repeatedly argued in closing that it only had to

prove constructive knowledge to prove the knowledge element for the charges of

possession of stolen property and bail jumping.  Because we have reversed the conviction

for possession of stolen property on the ground of insufficient evidence, we will apply

this argument only to the bail jumping conviction. Mr. Arno does not challenge his forgery conviction on appeal.

Mr. Arno did not object to the State's closing argument, so any alleged impropriety and prejudice must rise to the level of being "so flagrant and ill intentioned that an instruction would not have cured the prejudice." *State v. Walker*, 182 Wn.2d 463, 477-78, 341 P.3d 976 (2015). When considering whether arguments during closing are improper, we assess the conduct in the context of the entire argument. *State v. Loughbom*, 196 Wn.2d 64, 74-75, 470 P.3d 499 (2020).

To prove the charge of bail jumping, the State was required to prove that Mr. Arno had been "released by court order with knowledge of the requirement of a subsequent personal appearance before that court." Clerk's Papers at 54. During trial, Mr. Arno testified that he signed and received a scheduling order that contained five court dates, three of which were crossed out. He testified that he missed his court date because he was confused. In closing, the State argued that confusion was an excuse, not a defense to bail jumping.

Contrary to Mr. Arno's assertion, the State's argument did not diminish the knowledge element for bail jumping. The State needed to prove that he had knowledge of his next court date. Being confused about a court date does not equate with a lack of knowledge.

7

Nor did the State argue or suggest that Mr. Arno "should have known" his court date even if he did not actually know it. *See State v. Allen*, 182 Wn.2d 364, 376-79, 341 P.3d 268 (2015) (prosecutor repeatedly misstated the element of actual knowledge as being met if the defendant "should have known.")  Instead, the State argued that he knew his court date and failed to appear.  We find no error as it pertains to the conviction for bail jumping.

The lack of error forecloses Mr. Arno's final argument that his attorney was ineffective for failing to object to the prosecutor's closing argument.

Reverse conviction for second degree possession of stolen property and dismiss with prejudice.  Affirm convictions for forgery and bail jumping.  Remand for resentencing.

_____
Staab, J.

WE CONCUR:

_____
Siddoway, A.C.J.

_____
Lawrence-Berrey, J.

8